

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF OREGON**

| | | |
|---|---|---|
| **PETER C. MCKITTRICK**<br>BANKRUPTCY JUDGE | 1001 S.W. FIFTH AVENUE, # 700<br>PORTLAND, OREGON 97204<br>(503) 326-1536 | DIANE K. BRIDGE<br>LAW CLERK<br><br>TONIA McCOMBS<br>LAW CLERK |

June 15, 2016

Natalie C. Scott
The Scott Law Group
2350 Oakmont Way, Ste. 106
Eugene, OR  97401

Douglas P. Cushing
Jordan Ramis PC
Two Centerpointe Drive, Ste. 600
Lake Oswego, OR  97035

      Re:    Maria Toth-Brown, Case No. 16-30206-pcm13
               Motion for Additional Findings and to Alter or Amend Orders

Dear Counsel:

      The court has reviewed debtor's motion, landlord's response, and debtor's Supplemental Memorandum, as well as the transcript of the hearing in this matter, the exhibits, and the court's ruling. Although the motion is set for hearing on June 16, 2016, I conclude that the court has the necessary information to make a decision and that oral argument on this motion is not necessary. The purpose of this letter is to give you my ruling on debtor's motion. The hearing on the motion will be taken off the calendar. The hearing on the motion for stay pending appeal will remain on the calendar.

      Debtor moves to amend the findings that support this court's order granting relief from stay to debtor's landlord and denying confirmation of her chapter 13 plan and to alter or amend those orders. For the reasons set out below, the motion will be denied.

      Fed. R. Civ. P. 52(b), made applicable to these matters by Fed. R. Bankr. P. 9014(c) and 7052, provides that, on a party's motion filed within 14 days after entry of the judgment, "the court may amend its findings – or make additional findings – and may amend the judgment accordingly." Fed. R. Civ. P. 59(e), made applicable to this case by Fed. R. Bankr. P. 9023, provides that "[a] motion to alter or amend a judgment must be filed no later than [14] days after the entry of the judgment." Here, the order confirming plan was entered on May 19, 2016, and

the order granting relief from stay was entered on May 20, 2016. The motions were filed on June 3, 2016, so were timely.

"Motions under Rule 52(b) are primarily designed to correct findings of fact which are central to the ultimate decision; the Rule is not intended to serve as a vehicle for a rehearing." Davis v. Mathews, 450 F.Supp. 308, 318 (E.D. Cal. 1978). "The purpose of a Rule 52(b) motion is to 'correct manifest errors of law or fact.' Lyons v. Jefferson Bank & Trust, 793 F.Supp. 989, 991 (D. Colo. 1992), aff'd in part, rev'd in part on other grounds, 994 F.2d 716 (10th Cir. 1993)." In re Busch, 369 B.R. 614, 621 (10th Cir. BAP 2007).

A party seeking to amend a judgment under Rule 59(e) must raise one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence, not previously available; or (3) the need to correct a clear error of law or prevent manifest injustice. All Hawaii Tours Corp. v. Polynesian Cultural Center, 116 F.R.D. 645, 649 (D. Haw. 1987), rev'd on other grounds, 855 F.2d 860 (9th Cir. 1988).

Neither Rule 52(b) nor Rule 59(e) is to be used to obtain a rehearing on the merits or to relitigate old questions, see, e.g., Gutierrez v. Ashcroft, 289 F.Supp.2d 555, 561 (D. N.J. 2003), or to raise arguments that could have been made in advance of the prior court's ruling. Diocese of Winona v. Interstate Fire & Cas. Co., 89 F.3d 1386, 1397 (8th Cir. 1996); MidWestOne Bank and Trust v. Commercial Federal Bank, 331 B.R. 802, 813 (S.D. Iowa 2005); Costello v. U.S. Government, 765 F.Supp 1003 (C.D. Cal. 1991). Accord 9C Wright and Miller, Federal Practice and Procedure ¶ 2582 (3d ed. 2008). Thus, motions that merely revisit the same issues already ruled upon by the trial court, or which advance supporting facts that were otherwise available when the issues were originally briefed, will generally not be granted. In re Negrete, 183 B.R. 195, 197 (9th Cir. BAP 1995).

Debtor claims in her motions that the orders need to be altered or amended because of manifest errors of law or fact. Essentially, she argues that this court failed to address certain evidence or made errors in findings that led to the conclusion that the lease was terminated prepetition and that debtor had failed to establish any equitable defenses to the lease termination.

Debtor's arguments, which I will address below, are an attempt to reargue the entire case, asking this court to revisit the issues that were raised at the evidentiary hearing as well as to present new or more specific arguments that were not but should have been presented at the hearing. The motions primarily take aim at the court's findings and analysis by either pointing to evidence not specifically identified at the hearing or adding new theories not raised at the hearing. This is not the proper purpose for Rule 52(b) and 59(e) motions.

    1.    <u>$50,000 escrow deposit</u>

Debtor argues that I should have considered whether application the $50,000 escrow deposit to construction costs was improper and seeks a finding why this amount should not be a credit against alleged back rent.

Debtor never argued at the hearing that the $50,000 that was paid to the construction company should have instead been credited toward rent. Nor did she demonstrate that she was entitled to have the deposit applied to rent. The deposit was "as security for performance of construction obligations under the lease" and was to be retained until the occupancy certificate was issued. Exh. 12. If the certificate was not obtained by 2015, then landlord could retain the deposit as liquidated damages. The certificate of occupancy was not issued until June 2015, therefore landlord was entitled to retain the deposit as liquidated damages. Instead, landlord applied it toward debtor's obligation on the construction contract. Nothing required landlord to credit the escrow deposit against rent.

    2.    <u>Debtor made no payments for 14 months between June 2014 and November 2015</u>

Debtor argues that I erred in finding that she had made no rent payments in 14 of the months between June 2014 and November 2015. She is correct that she made no payments in 11, not 14, months. Some of the rent for those months was paid later, as shown on Exh. 7 and 8. The point of my comment about debtor failing to pay rent for many months was simply that landlord was not receiving any payments during those months, not that debtor never made any late payments for rents for those months. The exact number of months without payment does not change the fact that she was behind in her rent as of December 2015.

    3.    <u>No evidence that debtor sought a rent reduction or paid lower rent</u>

Next, debtor argues that I erred in finding that there is no evidence to show that debtor sought a rent reduction or paid the lower rent during the period when she could not use the space for its higher intended use.

I have reviewed debtor's testimony, and do find that she testified that she tried to talk to Mr. Bruun at various times about the rent during and before construction and tried to talk to him about construction costs and rent abatement but he ignored her. She also testified that she sent him emails and texts, to no avail, but she did not provide any documentation of those communications. There was no evidence that she paid the lower rent amount monthly during the construction period while seeking a rent reduction.

    4.    <u>Rent reduction and arrearage calculation</u>

Debtor argues that I should make specific findings and that I made numerous errors relating to the arrearage calculation. Contrary to debtor's motion, I did not find that debtor was entitled to a rent reduction during the construction period. I did note that, even if debtor were so entitled, the reduction for eight months would not have been sufficient to erase the arrearage due at the time of lease termination.

She now argues that the rent abatement should have been nine months, not eight. Assuming that debtor was entitled to a rent reduction, nine months of reduced rent would not be sufficient to alleviate the arrearage at the time of lease termination.

Debtor also argues that I should have considered whether debtor was entitled to an offset for her lost profits. Debtor never raised that argument at the hearing, and it is too late to do it now. In addition, she did not quantify what profits she claims to have lost. Her testimony that she lost events in October worth $70,000 does not give any information on how much of that amount would have been profit. And there is no other evidence of how much total profit she lost. Nor does she articulate a legal theory for why lost profits due to construction delay should be a credit toward rent. If she has a claim against the contractor for lost profits, that claim is separate from her lease.

Next, debtor argues that I failed to take into consideration a $3,000 cash rent payment made in May 2015 that does not appear in landlord's ledger. Debtor argued that cash payments in May 2015 of $5,500 were not credited toward her rent (one for $2,500 and one for $3,000). I found that the ledger did show application of the cash payments.

That finding was correct. The $2,500 cash payment was credited on May 18, 2015. The $3,000 cash payment debtor made on May 15, 2015 (Exh. J) appears to have been credited on June 1, 2015, against various charges from October and November of 2014. Exh. 7 p.15. That $3,000, along with a $1,000 cash payment on June 16, 2015, is reflected in Exh. 8 as a $4,000 payment with a date of June 1, 2014. Debtor did not show that landlord failed to account for the $3,000 cash payment made on May 15, 2015.

Debtor argues that landlord's Exhibits 7 and 8 are inconsistent with regard to late charges and that I should have addressed that issue in my ruling. Debtor argued in her hearing brief that she should have a credit for late charges, but did not quantify how much. She asserted that landlord was claiming about $120,000 in late fees and interest, and that those amounts should be adjusted.

It is not for this court to quantify an amount of late fees that perhaps should be credited for some unspecified time. It is undisputed that debtor was late with her rent on numerous occasions, including a number of months when she made no rent payments at all. Therefore, she has not demonstrated that late charges should not have been assessed.

As to any inconsistency between exhibits, debtor did not point those inconsistencies out or ask that they be taken into account. Landlord's property manager testified that Exhibit 8 reflected the $53,000 adjustment in late charges. It was for debtor to identify any errors in the calculation of late charges. She did not do that.

    5.    <u>Payment for permitting, engineering and architectural work</u>

Debtor argues that the evidence is unrefuted that she paid $74,135.57 in expenses for work on the leased premises that landlord was supposed to pay, and those amounts should be credited against unpaid rent.

This is simply rearguing what was argued at the hearing and not an appropriate issue to raise in a motion under Rule 52(b) or 59(e). In any event, she has not shown any manifest error.

As I pointed out in my ruling, the improvements described in the original lease for which landlord had an obligation were completed in 2011 or 2012. The amounts debtor paid thereafter, beginning in 2013, were not related to that work. Far from being unrefuted that those costs were landlord's obligation, Bruun's testimony, the lease documents, and Exhibit 17 all support the finding that the payments made for additional work done after the project described in the original lease was completed were not landlord's financial responsibility. Debtor's testimony does not trump the lease or lease extension.

6. Ruling that ORS 91.090 is controlling

Debtor argues that the court erred in ruling that ORS 91.090 is controlling in this case; landlord says that the ruling was correct. The parties misstate my ruling. I said that the lease in this case mirrors the statute in providing for a grace period for rent and giving landlord the right to terminate the lease and retake possession on nonpayment of rent. Under either the statute or the lease, debtor's failure to pay rent terminates the tenancy. I acknowledged that equitable defenses could be raised, but concluded that debtor had not established an equitable defense.

7. Conclusion that debtor had no equitable defenses and that estoppel did not apply

Debtor next challenges my conclusion that debtor had not shown that she was entitled to any equitable defenses, and requests that I address the Oregon Supreme Court case of 2606 Bldg. v. MICA OR I, Inc., 334 Or. 175 (2002), which she cites for the first time in this motion.

In that case, the court discussed forfeiture of leased commercial property for late payment of rent. It addressed the role of ORS 91.090 in forfeitures of leased property where there is a forfeiture provision in the lease itself. The issue is important, because a lessee cannot raise equitable defenses to statutory lease forfeiture claims. 334 Or. at 182. Where, however, a lease itself contains forfeiture provisions based on nonpayment of rent, and the "lessor seeks a forfeiture on the basis of the lease, rather than under ORS 91.090, the lessee may raise equitable defenses to the forfeiture action." Id. at 183.

Landlord argues that ORS 91.090 controls where, as here, the lease forfeiture provisions do not differ from the statute. The applicability of ORS 91.090 controls whether equitable defenses are possible, as equitable defenses cannot be raised "in response to *statutory* lease forfeiture claims." Id. at 182. Thus, where "the only basis for forfeiture was the statute," because the lease itself had no forfeiture provision, the court could not provide "equitable relief to the lessee." Id. (discussing Rainey v. Quigley, 180 Or. 554 (1947)). As I understand the court's decision, where the lease contains a forfeiture provision and the landlord relies on that provision, the claim of forfeiture is contractual rather than statutory and the lessee may raise equitable defenses, because using equity will not defeat the legislative will. This reasoning would apply whether the lease provisions are the same as or different from the statute.

In any event, as I found after the trial, the circumstances of this case do not support an equitable defense of forfeiture of the leased property for failure to pay rent. The Oregon court said:

> [F]orfeiture of a leasehold for late payment of rent – depending upon circumstances such as the remaining term of the lease, market conditions, and improvements that the lessee might have made to the property – might result in substantial harm to the lessee compared to the minimal harm to the lessor of receiving the rent several days late. That asymmetry provides a basis for equitable relief.

Id. at 186. If the default is the failure to pay rent, "equity ordinarily intervenes to prevent the exercise of a power of termination, provided that the money is paid." Id. at 187 (quoting David A. Thomas, ed., 5 Thompson on Real Property § 40.08(b)(3)(iv), 63-64 (Thomas ed. 1994)).

Here, debtor was chronically behind in her rent, having started to miss rent payments in June 2014. She was never able to catch those payments up before the lease was terminated in December 2015. There is no evidence that she attempted to pay the balance of the past due rent when she got the December 9 termination notice from landlord.

This is not a case where leased property is being forfeited because of one late payment, or where the tenant made a mistake and attempted to pay in full the past due rent within days of the termination notice.

Debtor argues that I erred in concluding that landlord was not estopped from terminating the lease. The evidence does not support estoppel. There was evidence that landlord locked debtor out of the property on more than one occasion, but there was no showing that those lock-outs were wrongful. There were delays in construction of the improvements, but those delays were not of landlord's making; they were either caused by the city or by debtor's failure to make certain payments to keep the construction moving. Although landlord ignored debtor's attempts to work something out on the rent arrearage, it was not required to make any accommodations. Landlord allowed debtor to stay in the property for many months while she was either not paying rent or paying it late, including allowing her to remain in the leased premises from June to December after the construction was complete. She was more than $100,000 behind in rent when the lease was terminated.

The biggest inequity to debtor here is that she invested more than $200,000 in upgrading the property to a higher use, which investment will be lost if she must leave the property. That investment, however, was contemplated in the lease extension, and the fact that debtor had to pay the construction costs did not forgive her obligation to pay rent. Although landlord will retain the benefit of the upgrades to the building, it also had to dedicate 200 feet of property to the city in order to obtain the higher use permit, a not insignificant cost.

Debtor seeks to distinguish Pratt v. McNally-Rathbone, Inc., 61 Or. App. 443 (1983), which I cited for the proposition that a tenant's expenditures to improve a landlord's property

does not estop the landlord from terminating the lease for nonpayment of rent. I agree that, in Pratt, the improvements had been made two or three years before termination of the lease, and the landlord had not breached its obligations under the lease. However, the court was clear that the tenant's expenditure of money on improvements to the property, where the improvements were contemplated in the lease, does not affect the landlord's right to possession when the tenant fails to pay the rent. In Pratt, forfeiture was affirmed even though the tenant had tendered the payment the same day the landlord filed an FED action to regain possession of the property. In this case, debtor did not demonstrate that landlord breached the lease, and there is no evidence that she tendered rent either when landlord declared the lease terminated or later when it filed the FED action.

I recognize that debtor will lose her business if she cannot use this leased property, and that, without her business, she will be unable to pay landlord its past due rent or pay the debt remaining for the construction costs. Nonetheless, a landlord is entitled to be paid rent for occupancy, and debtor repeatedly failed to pay rent and built up an arrearage of more than $100,000. At some point, a landlord must be able to terminate a lease for nonpayment of rent, even if that means that the tenant's business is lost.

There was no manifest error of law or fact in my determination that equity does not prevent landlord from terminating the lease and regaining possession of the property.

8. Lack of findings on landlord's breaches, including lock-outs, and feasibility

Finally, debtor argues that I erred in failing to address testimony regarding partial or constructive eviction through lock-outs and debtor's lost profits. These are new arguments not raised at the hearing.

In any event, I addressed lost profits above. As to the lock-outs, the testimony was not specific about when those lock-outs occurred (other than one that occurred the end of the day of November 12 and ended the next morning when debtor paid some cash rent), or the circumstances that led to those lock-outs. Debtor did not show that they were wrongful.

As to "back-up" findings about feasibility of debtor's plan, it is not appropriate to make advisory rulings on an issue that is not necessary to a decision on the matter before the court. I have denied confirmation of debtor's plan; there is no feasibility issue to consider. Any question about feasibility will be addressed if and when debtor files an amended plan and objections raise the issue.

CONCLUSION

Debtor has not shown that she is entitled to relief under either Rule 52(b) or Rule 59(e), except as to two specific findings that do not affect the outcome in this case. Debtor's motion for additional findings and to alter or amend the orders is denied, except that the findings are amended to reflect that the number of months in which debtor failed to make any rent payments

Natalie C. Scott
Douglas P. Cushing
June 15, 2016
Page 8

was 11, not 14, and the fact that debtor did in fact make efforts to discuss the rent with landlord during and after construction. Mr. Cushing should submit the order, granting the motion in part as set out in this paragraph and otherwise denying it.

                Sincerely,

                Peter C. McKittrick
                Bankruptcy Judge

cc:    George Hoselton
       Wayne Godare